USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 19, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                                        :

ALEXA BORENKOFF, on behalf of herself and :
all others similarly situated,                              :

                                           :

                     Plaintiff,                  :             16-cv-8532 (KBF)

                  -v-                        :

                                           :         OPINION & ORDER

BUFFALO WILD WINGS, INC. and BLAZIN :
WINGS, INC.,                                  :

                                         :

                   Defendants.            :

                                           :

--------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

On November 2, 2016, Alexa Borenkoff ("plaintiff" or "Borenkoff") commenced this deceptive trade practices action against Buffalo Wild Wings, Inc. and Blazin Wings, Inc. (collectively, "BWW" or "defendants"). (See Compl., ECF No. 2.) Borenkoff subsequently filed an amended complaint on April 3, 2017. (See First Amend. Compl. ("FAC"), ECF No. 17.) Currently before the Court is defendants' motion to dismiss the FAC under Fed. R. Civ. P. 12(b) ("Rule 12(b)"). (ECF No. 24.)

For the reasons discussed below, the Court hereby GRANTS defendants' motion.

I.    BACKGROUND

The factual allegations below are derived from plaintiff's FAC, and are presumed true for purposes of the present motion.

Defendants own, operate, and franchise more than one thousand restaurants across the United States and internationally doing business as "Buffalo Wild

Wings."[1]  (FAC ¶ 8.)  Defendants' restaurants are primarily known for serving chicken wings and other meat products, but also offer certain non-meat options including, inter alia, roasted garlic breaded mushrooms, cheese curds, and french fries.  (FAC ¶ 17.)

Alexa Borenkoff is a self-professed vegetarian who visited two different BWW restaurants in or around January 2015.  (FAC ¶ 20-22.)  During both visits, Borenkoff requested, consumed, and paid for orders of french fries and mozzarella sticks.  (FAC ¶ 23.)  Although BWW's menu contains a listing of ingredients, it "does not list or reference using beef tallow" to fry non-meat food items.  (FAC ¶ 13-14.)  According to Borenkoff, "[t]he industry standard is to use non-beef cooking oil to fry items," and "a reasonable consumer would not expect non-meat items to be fried in beef tallow."  (FAC ¶ 15-16.)

Borenkoff's complaint alleges that despite the lack of notice, and contrary to "industry standard", the items she consumed were cooked using beef tallow.  (FAC ¶ 31, 40.)  Borenkoff claims that defendants' failure to disclose the use of beef tallow to fry non-meat products constitutes a "material misrepresentation and omission[]", and that she would not have ordered, consumed, or "paid a premium" for french fries or mozzarella sticks if she had known beef tallow was used.  (FAC ¶ 25-27, 42.)  Borenkoff claims that she and other members of the proposed class "suffered damages in an amount equal to the amount they paid to BWW."  (FAC ¶ 38.)

---

[1] Defendants note that Buffalo Wild Wings, Inc. is incorrectly named as a defendant in this action because Blazin Wings, Inc. "actually owns and operates the vast majority of BWW's corporate restaurants."  (Defs.' Mem. at 3 n.2.)  Because the Court concludes infra that this action must be dismissed as to all named defendants, it does not address this argument specifically.

Borenkoff commenced the present action against BWW on November 2, 2016. (See generally Compl.) The FAC alleges, in sum, that defendants: (1) engaged in deceptive and/or misleading trade practices by surreptitiously frying their non-meat food items in beef tallow in violation of New York General Business Law ("GBL") § 349 (FAC ¶¶ 67-73); and (2) have been unjustly enriched as a result of their "bad faith conduct" (FAC ¶¶ 74-77). As to relief, Borenkoff is seeking: (1) compensatory damages and/or restitution on behalf of herself and all other vegetarians misled by defendants; (2) punitive damages; (3) injunctive and declaratory relief; and (4) reasonable fees and costs. (FAC at 11.)

On April 24, 2017, defendants moved to dismiss the FAC. (ECF No. 24.) Defendants argue that Borenkoff lacks Art. III standing, that she has failed to state a claim under GBL § 349, and that her common law unjust enrichment claim fails as a matter of law. (See generally Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s First Amend. Compl. ("Defs.' Mem."), ECF No. 25.) Borenkoff opposed that motion on May 22, 2017 (ECF No. 30), and defendants replied on June 5, 2017 (ECF No. 31). This case was subsequently transferred to the undersigned for all purposes on September 26, 2017.

II. LEGAL PRINCIPLES

A. Rule 12(b)(1) Standard

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional

3

power to adjudicate it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings", and "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. (internal quotations and alterations omitted). Generally, a court must determine whether it has subject matter jurisdiction before proceeding to evaluate the merits of a plaintiff's cause of action. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-102 (1998).

B. Article III Standing

Under Article III of the Constitution, federal courts may only exercise jurisdiction over actual cases or controversies. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see also W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (internal quotations and citations omitted). This "irreducible constitutional minimum of standing contains three elements." Lujan, 504 U.S. at 560. First, the plaintiff must have

suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Id. at 560 (citations and alterations omitted). Despite those requirements, the Second Circuit has held that "[i]njury in fact is a low threshold, which . . . 'need not be capable of sustaining a valid cause of action.'" See Ross v. Bank of America, N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006)). Second, there must be a "causal connection between the injury and the conduct complained of." Lujan, 504 U.S. at 560-61 (citations omitted). Third, and finally, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (quotations and citations omitted). The party asserting jurisdiction bears the burden of clearly alleging facts that demonstrate standing. See Ross, 524 F.3d at 222 (citation omitted).

C. Rule 12(b)(6) Standard

At the motion to dismiss stage, a court must construe the complaint liberally, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party. Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001), as amended (Apr. 20, 2001). A complaint survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are merely consistent with a defendant's liability." Id. (internal quotation marks omitted). Application of this standard is "context-specific," and requires the reviewing court to "draw on its judicial experience and common sense." Id. at 679. The Court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678 (internal quotation omitted).

   D. GBL § 349

   To state a claim under GBL § 349, a plaintiff must sufficiently allege: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted); see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (N.Y. 1995). Although the statute does not require proof of justifiable reliance or intent to defraud, the plaintiff must demonstrate that "a material deceptive act or practice caused actual, although not necessarily pecuniary, harm." Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 55-56 (N.Y. 1999) (citation omitted).

   Courts have routinely held that pecuniary loss arising directly from the purchase of the defendant's product—e.g., the loss of the purchase price itself—does not constitute an "actual injury" for purposes of GBL § 349. See, e.g., id.; see also Baron v. Pfizer, Inc., 840 N.Y.S.2d 445, 448 (N.Y. App. Div. 2007); Donahue v.

6

Ferolito, Vultaggio & Sons, 786 N.Y.S.2d 153, 154 (N.Y. App. Div. 2004).  In

essence, there must be a distinction between the deceptive act or practice

underlying the transaction and the resulting injury.  For instance, a plaintiff might

allege that "the price of the product was inflated as a result of defendant's deception

or that use of the product adversely affected plaintiff's health."  Baron, 840 N.Y.2d

at 448.  Simply asserting that consumers are "prevented . . . from making free and

informed choices" or that consumers "would not have purchased" an item "absent a

manufacturer's deceptive commercial practice[]" is not enough.  Small, 94 N.Y.2d at

56.

III.    DISCUSSION

The crux of defendants' argument is that Borenkoff has failed to plead an

"injury" sufficient to confer Art. III standing or to state a claim under GBL § 349.

While this Court ultimately believes that Borenkoff has Art. III standing (although

it is a close call), the Court agrees that she has field to state a claim.  Accordingly,

the FAC must be dismissed.

A.  Borenkoff Has Art. III Standing

Defendants' argument that Borenkoff lacks Art. III standing is non-frivolous.

Art. III requires, inter alia, that the plaintiff has suffered an "injury in fact" that is

"concrete and particularized," "actual or imminent," and "fairly traceable to the

challenged action."  See Lujan, 504 U.S. at 560.  The plaintiff must "clearly and

specifically set forth facts sufficient to satisfy" this requirement, and "[a] federal

court is powerless to create its own jurisdiction by embellishing otherwise deficient

allegations of standing." See Whitmore v. Arkansas, 495 U.S. 149, 156 (1990) (citation omitted).

Here, Borenkoff only "clearly and specifically" alleges one injury: that she wouldn't have purchased defendants' food items if she had known they were fried using beef tallow. (See FAC ¶¶ 3, 18, 25, 33, 37-39, 42.) That is, in essence, an allegation of pure economic injury—Borenkoff specifically states that she "suffered damages in an amount equal to the amount [she] paid to BWW." (FAC ¶ 38.) But numerous courts have raised doubts as to whether that type of alleged economic injury is cognizable where, as here, plaintiff fails to allege that the item was defective in any way, or that it was worth objectively less than what she paid. See, e.g., Koronthaly v. L'Oreal USA, Inc., 374 Fed. Appx. 257, 259 (3d Cir. 2010) (plaintiff failed to allege a concrete injury absent any allegation that she received a product that failed to work or was worth objectively less than what one might expect); see also Rivera v. Wyeth-Ayerst Labs., 382 F.3d 315, 319-21 (5th Cir. 2002).

Borenkoff paid for french fries and mozzarella sticks, and that is ultimately what she received. Although Borenkoff now claims that she had an expectation that the items she ordered were prepared using non-beef cooking oil (in part based on the alleged "industry standard"), she does not even attempt to allege that the beef tallow harmed her, that the items were "defective" as a result, or that they were worth objectively less than items cooked using non-beef oil. To be sure, Borenkoff alleges at various points that she paid a "premium" for the beef tallow-fried items, and that "[t]he cost of the items [she] purchased was effected by

BWW['s] material misrepresentations and omissions," but it is unclear from the FAC exactly <u>how</u> the cost of the items was effected, or <u>why</u> she believes she paid a premium (<u>e.g.</u>, because the beef tallow costs less than non-beef oil). (<u>See</u> FAC ¶¶ 25-26.)

For the reasons stated above, the Court has serious reservations as to the adequacy of Borenkoff's complaint for purposes of Art. III standing. That said, the Second Circuit has held that "[i]njury in fact is a low threshold, which . . . 'need not be capable of sustaining a valid cause of action.'" <u>See</u> <u>Ross</u>, 524 F.3d at 222 (quoting <u>Denney</u>, 443 F.3d at 264). Ultimately, Borenkoff sufficiently alleges that she would not have purchased defendants' food items if she knew they were fried using beef tallow. There is some "concrete and particularized" injury in paying for one item and receiving another, even if you ultimately receive the "benefit of your bargain" from a purely objective economic standpoint. For that reason, the Court concludes that Borenkoff has sufficiently plead Art. III standing here.

B. <u>Plaintiff Has Failed to State a Claim</u>

Although Borenkoff's alleged injury is sufficient to confer Art. III standing, the Court concludes that it is insufficient to state a claim under GBL § 349. To state a claim under GBL § 349, plaintiff must allege, <u>inter alia</u>, that she was "injured" as a result of the misleading act or practice. <u>See, e.g.</u>, <u>Spagnola</u>, 574 F.3d at 74. Here, the FAC explicitly alleges that plaintiff "suffered damages in an amount equal to the amount [she] paid to BWW." (FAC ¶ 38.) Although the FAC also vaguely asserts that plaintiff paid a "premium" for the beef tallow-fried items

(see, e.g., FAC ¶ 25), Borenkoff does not allege how the use of beef tallow affects the objective economic value of the food items she received.  Accordingly, Borenkoff's invocation of the word "premium" is nothing more than a "legal conclusion couched as a factual allegation," and that allegation is insufficient to state a claim for relief that is "plausible on its face."[2]  Iqbal, 566 U.S. at 678 (internal quotation omitted).

As a result, Borenkoff's alleged injury is limited to "the amount [she] paid to BWW."  (FAC ¶ 38.)  But Courts applying New York law have routinely held that the loss of the purchase price of an item, standing alone, does not constitute an "actual injury" under GBL § 349.  See, e.g., Small, 94 N.Y.2d at 55-56.  Because Borenkoff does not separately allege that she was harmed by the food items she received, that those items were defective in any way, or that the price of the food items was inflated as a result of using beef tallow, she has failed to adequately plead an injury for purposes of GBL § 349.  Accordingly, that claim must be dismissed.

C.  Plaintiff's Unjust Enrichment Claim is Duplicative

Finally, plaintiff's unjust enrichment claim is duplicative of her GBL § 349 claim, and must be dismissed on that basis.  Under New York law, "an unjust enrichment claim cannot survive where it simply duplicates, or replaces a conventional contract or tort claim."  Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting Corsello v. Verizon New York, Inc., 18 N.Y.3d

---

[2] This is not to say that plaintiff could not have sufficiently pled an injury under GBL § 349.  If plaintiff had properly alleged, for example, that non-beef cooking oil is a "premium" ingredient, and therefore food items fried in non-beef oil are objectively more valuable than those cooked in beef tallow, she may have sufficiently pled an injury.

777, 790-91 (N.Y. 2012).  Further, the Court of Appeals has made clear that "unjust enrichment is not a catchall cause of action to be used when others fail," and that "[i]t is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  Corsello, 18 N.Y.3d at 790.

The essence of Borenkoff's unjust enrichment claim is that (1) she purchased defendants' food items as a result of their material omissions, and (2) defendants' unjustly retained the revenue from those purchases.  Those allegations are entirely duplicative of Borenkoff's GBL § 349 claim, and therefore the unjust enrichment claim must be dismissed under New York law.

In any event, the FAC does not plausibly allege any facts tending to suggest that it would be "against equity and good conscience" to permit defendants to retain the purchase price of the food items at issue.  See Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012) (citation omitted).  Defendants are not alleged to have marketed the food items as "vegetarian" or "free from beef tallow," and though the FAC makes clear that Borenkoff is frustrated that her expectations (reasonable or otherwise) were not satisfied, the facts here are not suggestive of any type of unusual equitable obligation running between the two parties, who engaged in an arms-length commercial transaction.  See Corsello, 18 N.Y.3d at 790.  As such, the Court would separately dismiss the unjust enrichment claim on that basis.

11

IV.    CONCLUSION

For the reasons stated above, the Court hereby GRANTS defendants' motion to dismiss at ECF No. 24.  Plaintiff's first amended complaint at ECF No. 17 is DISMISSED.

The Clerk of Court is directed to terminate this action.

SO ORDERED.

Dated:      New York, New York
            January 19, 2018

_____
            KATHERINE B. FORREST
            United States District Judge